**Not Recommended for Publication or Citation**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-335-KSF

KENNETH HICKS                                                                                           PLAINTIFF

VS:                         **MEMORANDUM OPINION AND ORDER**

STEPHEN M. DEWALT, ET AL.                                                                  DEFENDANTS

Kenneth Hicks, an individual currently incarcerated at the Federal Medical Center ("FMC") in Lexington, Kentucky, has submitted a purported *pro se* civil rights action, pursuant to 28 U.S.C. § 1331 and the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 430 U.S. 388 (1971) and has paid the filing fee.

The complaint is now before the Court for initial screening. 28 U.S.C. § 1915A; *McGore v. Wrigglesworth*, 114 F.3d 601, 607-8 (6th Cir. 1997).

As Hicks is appearing *pro se*, his complaint is held to less stringent standards than those drafted by attorneys. *Burton v. Jones*, 321 F.3d 569, 573 (6th Cir. 2003); *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999). During screening, the allegations in his complaint are taken as true and liberally construed in his favor. *Urbina v. Thoms*, 270 F.3d 292, 295 (6th Cir. 2001). But the Court must dismiss a case at any time if it determines the action is frivolous, malicious, or fails to state a claim upon which the Court may grant relief. 28 U.S.C. § 1915(e)(2)(B).

CLAIMS

Plaintiff, who admits to being obese, complains of certain conditions in his confinement,

claiming that the Defendants (1) are deliberately indifferent to his serious medical needs, in violation of the U.S. Constitution's Eighth Amendment; (2) deny him due process of law in violation of the Fifth Amendment; (3) discriminate based on his obesity and race, for which he has brought this action under 42 U.S.C. § 1981; (4) conspire to violate his civil rights, compensable under 42 U.S.C. §§ 1985-85; and (5) do not comply with the Rehabilitation Act of 1973 and the Americans with Disabilities Act ("ADA").

## DEFENDANTS

As the Defendants, Plaintiff has named the following seven (7) employees of the Federal Bureau of Prisons ("BOP"): (1) FMC Warden Dewalt; (2) Clinical Director Dr. Michael Growse; (3) Health Care Unit Manager Kenneth Coleman; (4) Primary Care Physician Dr. Holbrook; (5) Associate Warden Gregory T. Kapusta; (6) Associate Warden Edward Johnson; and (7) the BOP's Regional Director K. M. White. Plaintiff specifies that they are all sued in their official and individual capacities, and he claims that there may be persons unknown to him who were or are involved in the conspiracy.

## RELIEF REQUESTED

Plaintiff seeks declaratory, injunctive and damage relief, including punitive damages.

## FACTUAL ALLEGATIONS

The following is a summary of the factual allegations which the Plaintiff presents in his typewritten 19-page complaint and attachments thereto.

Plaintiff begins with the information that he is 6 feet and 6 inches tall and weighs 561 pounds. He claims that he has always been extremely large, and when he arrived at FMC-Lexington, he weighed 785 pounds but was fully mobile, with no back pain. However, in March of 2003, he suffered a fall, to which he traces his current back pain. Hicks attaches copies of medical records from 2003-2004, as

2

well as those covering his treatment in 2007.

Plaintiff alleges that he now suffers extreme back pain and gets around with the use of a 36-inch wide wheelchair, which cannot access certain areas of the facility. Hicks provides copies of seven December 18, 2006, "Inmate Request to Staff Member" forms which he completed and sent to seven BOP staff members at FMC-Lexington, including three of the Defendants, Dewalt, Growse, and Coleman. The first paragraphs in each are identical:

> I am in serious need of medical assistance. I am a 35 year old, black male. When I arrived here I weighed 785 lbs. Without help or treatment, I have lost 220 lbs and now weight 565 lbs. When I came here I could walk and perform most all required daily activities. I have been complaining of intolerable/intractable low back pain. I have some spasms with re-forced pain in both legs to include my left ankle. I have some fasiculations both legs and severe muscle spasms of lumbar 4 & 5 area of the spine. I understand that Dr. Dehoyas gone my care will now be provided by Dr. Growse. I am requesting the following to be done: (1) MRI, lumbar spine (must be open due to my size); (2) EMG study; (3) orthopedic and neurological workup; (4) metabolic workup and; (5) assessment and treatment for morbid obesity.

Exhibits [hereinafter "Ex."] 1 - 7.

All of these forms contain a second paragraph wherein the Plaintiff individualizes his requests. To Defendant Dewalt, whom he characterizes as the prison C.E.O., he was written:

> Warden, I am seeking your personal involvement and attention. These serious matters are of years duration, with no help, no treatment, and no plan. I realize you are not a doctor, but I also realize you have the authority (and duty) to make certain some things are done and done soon. I am appreciate your concern and anticipated effort on my behalf.

Ex. 1. To the Defendant Clinical Director, Hicks has added the following:

> Dr. Growse, I can only hope that with Dr. Dehoyas now out of your way you will be able and willing to help with these serious problems. I want to see you ASAP so that I can begin to implement the life style changes as well as all other programs of treatment that you determine.

Ex. 2. To the Defendant Health Care Unit Manager, Plaintiff has written: "Mr. Coleman, I know you

3

have little to do with medical situations, but since I feel these legal issues are more complicated, I felt you should be aware and properly follow up to see if I get the proper care I am due." Ex. 5.

Of these three named Defendants, Hicks' exhibits show that he received a response from only one, Dr. Growse. On January 4, 2007, the doctor wrote at the bottom of the request: "I will see you soon in the clinic. PT says they cannot do an EMG for technical reasons due to your size."

Not having heard a response from the majority of the staff to whom he wrote, on January 19, 2007, Plaintiff claims to have submitted to the defendant warden a BP-9 request for administrative remedy, Remedy No. 330733-F1, but it was rejected for having multiple issues in one remedy. On February 2, 2007, he tried again, filing another BP-9 (Remedy No. 442191-F1), in which he complained of (1) not receiving proper medical attention, (2) being barred from participation in certain prison programs because of physical barriers, and (3) being a victim of discrimination based on his size. Complaint at 9. Attachments to the instant complaint show that Administrative Remedy No. 442191 was pursued to every level of the BOP. Ex. 8-13.

DISCUSSION

To state a claim that is cognizable as an action brought under 28 U.S.C. § 1331 and *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971), a plaintiff must plead two essential elements. He must show, first, that he has been deprived of rights secured by the Constitution or laws of the United States and, second, that the defendants allegedly depriving him of those rights acted under color of federal law. *Bivens*, 403 U.S. at 397.

The instant plaintiff has pled both components of a *Bivens* claim and has apparently exhausted the BOP's administrative remedy program as to some of his issues. *See* 28 C.F.R. §§ 542.10-.19 (1998). Therefore, he will be permitted to proceed on the majority of his claims about his medical care

4

and accommodations. However, certain of his claims must be dismissed pursuant to 28 U.S.C. § 1915A(b).

It is well established that the federal courts do not have jurisdiction to consider actions for monetary damages against the United States unless sovereign immunity has been waived. *United States v. Mitchell*, 463 U.S. 206, 212 (1983). "In a suit against the United States, there cannot be a right to money damages without a waiver of sovereign immunity." *United States v. Testan*, 424 U.S. 392 (1976); *see also Will v. Michigan Dept. of State Police*, 109 S.Ct. 2304 (1989); *Kentucky v. Graham*, 473 U.S. 159 (1985). United States has not, to date, waived its sovereign immunity to monetary damages for constitutional torts. *Nuclear Transport & Storage, Inc. v. United States*, 890 F.2d 1348, 1351-52 (6th Cir. 1989).

Nor may a plaintiff avoid the bar of sovereign immunity simply by naming individual federal officers of the United States. *Ecclesiastical Order of the Ism of Am v. Chasin*, 845 F.2d 113, 115 (6th Cir. 1988) (citing *Hutchinson v. United States*, 677 F.2d 1322, 1327 (9th Cir. 1982)). When damages are sought against federal employees in their official capacities, the damages in essence are sought against the United States, and such claims cannot be maintained. *Myers & Myers, Inc. v. United States Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975); *Morris v. United States*, 521 F.2d 872, 874-75 (9th Cir. 1975).

The federal courts have jurisdiction under 28 U.S.C. § 1331 for damage claims against federal defendants only when they are sued in their individual capacities under the doctrine of *Bivens*, and only where the conduct rises to the level of a constitutional violation. *Davis v. Passman*, 442 U.S. 228 (1979). Accordingly, the Plaintiff's damage claims against all of the defendants in their official capacities will be dismissed and only the damage claims against them individually can proceed.

There are three individual Defendants herein on whom the law will not impose liability. Derivative or *respondeat superior* liability cannot be applied in a *Bivens* action. *Terrell v. Brewer*, 935 F.2d 1015, 1018 (9th Cir. 1991); *Hays v. Jefferson County, Kentucky*, 668 F.2d 869, 872 (6th Cir.), *cert. denied*, 459 U.S. 833 (1982). Supervisory government employees generally cannot be held accountable for the actions of subordinates, because lower level employees are not the employees or agents of their supervisors, but are fellow servants of the United States, which is immune from suit. *Sportique Fashions, Inc. v. Sullivan*, 597 F.2d 664, 666 (9th Cir. 1979).

The plaintiff does not assert that Warden Dewalt, Associate Warden Johnson, or Regional Director White was personally involved in any of his medical care or accommodation decisions. Without personal involvement they cannot have liability imposed. *See Williams v. Faulkner*, 837 F.2d 304, 308 (7th Cir. 1988); *Boyce v. Alizaduh*, 595 F.2d 948, 953 (4th Cir. 1979). In order to find them liable, the plaintiff must allege that the supervisors condoned, encouraged or participated in the alleged misconduct. *Birrell v. Brown*, 867 F.2d 956, 959 (6th Cir. 1989).

The Plaintiff's allegations herein fault the warden, an associate warden, and the BOP's Regional Director in their supervisory roles. After the warden was notified of the Plaintiff's dissatisfaction with his treatment in a BP-9, this defendant made it clear that he relied on other personnel in those areas. So, too, did Defendant White. There are no personal allegations against Johnson. Because they had no personal role with regard to the medical or other decisions which were made about Hicks' treatment in the past year, these three BOP administrative Defendants are entitled to dismissal without prejudice. *See Shehee v. Luttrell*, 199 F.3d 295, 299-300 (6th Cir. 1999), *cert. denied*, 530 U.S. 1264 (2000). Moreover, White is so removed from any role and so obviously named only for her denial of relief administratively, she is entitled to dismissal. *Id.*

Finally, a word about those federal officials whom Hicks claims are unknown to him. He is advised of the following provision of Federal Rule of Civil Procedure 4:

> Time Limit for Service. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

Fed.R.Civ.P. 4(m). Plaintiff is on notice that if any John Doe Defendants are not named and served within 120 days, then the claims against said John Doe Defendants shall be dismissed pursuant to the terms of Federal Rule of Civil Procedure 4(m).

## CONCLUSION

Accordingly, the Court being advised, **IT IS ORDERED** as follows:

(1) The following are **DISMISSED**, *sua sponte*, without prejudice: (a) Plaintiff's damage claims against all of the Defendants in their official capacities; (b) the damage claims against FMC Warden Dewalt and Associate Warden Edward Johnson in their individual capacities; and (c) all claims against Regional Director K. M. White.

(2) The Lexington Clerk's Office shall prepare and issue summons for FMC Warden Dewalt; Clinical Director Dr. Michael Growse; Health Care Unit Manager Kenneth Coleman; Primary Care Physician Dr. Holbrook; Associate Warden Gregory T. Kapusta; and Associate Warden Edward Johnson in their official and individual capacities; in addition to the summonses, the Clerk shall make 2 sets of copies of the summonses and mark one set to be served on the United States Attorney General and one set to be served on the United States Attorney for the Eastern District of Kentucky.

(3)  The Clerk shall also prepare as many copies of the complaint as there are summonses and any required USM Forms 285. If insufficient information exists to sufficiently or effectively complete any summons or USM Form 285 regarding any defendant, the Clerk shall promptly make a clerk's entry on the docket stating why the Clerk cannot fill out the summons or USM Form 285 or any other documents necessary to effectuate service.

(4)  After the Lexington Clerk's office has prepared the summonses, USM Forms 285, complaint copies, copies of this Order, and/or any other documents necessary to effectuate service, a Deputy Clerk in the Lexington Clerk's office shall hand-deliver said documents to the United States Marshal's office in Lexington, Kentucky.

(5)  The Lexington Deputy Clerk making the delivery referenced in paragraph (4) to the United States Marshal's office shall obtain from the Marshal a receipt for the hand-delivered documents, which receipt shall be entered into the instant record by the Clerk.

(6)  The United States Marshal shall serve a summons, complaint copy, and copy of this Order on each named defendant for whom a summons has been prepared and shall serve copies of the documents on the United States Attorney General, in Washington, D.C. and on the United States Attorney for the Eastern District of Kentucky, all service to be made by certified mail, return receipt requested.

(7)  The United States Marshal shall make a return report to the Court of whether the summons is executed or is still unexecuted within forty (40) days of the date of entry of this Order.

(8)  The Plaintiff shall keep the Clerk of the Court informed of his current mailing address. Failure to notify the Clerk of any address change may result in a dismissal of this case.

(9)  For every further pleading or other document he wishes to submit for consideration

by the Court, Plaintiff shall serve upon each Defendant, or, if appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  The Plaintiff shall send the original papers to be filed with the Clerk of the Court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the document will be disregarded by the Court.

      This 11th day of December, 2007.



Signed By:
*Karl S. Forester* KSF
United States Senior Judge